421 So.2d 880 (1982)
STATE of Louisiana
v.
Darren HOOKS.
No. 82-KA-0278.
Supreme Court of Louisiana.
October 29, 1982.
Dissenting Opinion January 5, 1983.
*882 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., David R. Paddison, Thomas Chester, Louise Korns, Asst. Dist. Attys., for plaintiff-appellee.
John M. Lawrence, for defendant-appellant.
DAVID R.M. WILLIAMS, Justice Pro Tem.[*]
Defendant Darren Hooks was charged on September 18, 1980, by a Grand Jury indictment with first degree murder while in the perpetration of aggravated rape, a violation of LSA-R.S. 14:30, committed on August 26, 1980. Defendant entered a plea of not guilty and in May, 1981, he was tried before a twelve member jury and found guilty as charged. The jury was unable to agree upon a sentencing recommendation, as required by statute, and defendant was sentenced, under LSA-C.Cr.P. Art. 905.6, to life imprisonment, without benefit of probation, parole, or suspension of sentence. Defendant now appeals urging eight assignments of error.
At the time of the murder for which defendant was indicted and convicted, he was sharing an apartment with Ruby Magee, the mother of the victim, and Tamara Magee, the two year old child victim who had been sexually assaulted and killed.
In the afternoon of August 26, 1980, Ruby Magee was at work in a fast food restaurant in New Orleans, and the victim, Tamara, was at her grandmother's house. The defendant came to see the victim's mother at work. He wanted to know if the mother wanted him to pick up the victim that night. There was testimony that he became angry and upset as he talked with the victim's mother, before he left to pick up the victim from the grandmother's house.
When defendant arrived at the grandmother's house around five or six p.m., the victim was noticably afraid of the defendant and cried when he appeared. When the victim left the grandmother's house, she was healthy and fully dressed with no signs of bruises, cuts or any other injuries on her body.
Tamara Magee was next seen at Charity Hospital at about 11:20 p.m. that same evening; she was dead on arrival at the Emergency Room. When defendant took the child to the hospital, she was nude, wrapped only in a sheet, with many different lacerations and contusions all over her body, both superficially and internally. The pathologist who performed the autopsy testified at trial, that there were numerous bruises on the child's head, face, chest, hips, abdomen and thighs. On the side of the child's face *883 there was a bruise in the shape of a hand; and there were puncture wounds in the abdomen area that were the size and shape of finger nails. At trial, the pathologist, Dr. McGarry, testified that the puncture wounds appeared "... as if the skin had been very violently grasped in someone's hand."
The pathologist further testified that the actual cause of death was due to the victim's liver being torn from some type of compressive force and also due to injuries to the head which caused brain swelling and internal hemorrhaging. In addition, the pathologist noted that the child's vagina and hymen were torn and bruised. He concluded that the damage done to the child's genitals was too extensive to have been done by a finger, and he further stated that the entire pattern of injuries to the child's genitals was very characteristic of rape. The victim's mouth and lips showed signs of being bruised, swollen and cut. Several forensic tests were performed to detect the presence of any seminal fluid in the victim. One test proved positive, finding seminal fluid in the child's mouth.
At the hospital, while the family of the victim gathered, the defendant gave three different accounts of how the injuries occurred. First, he told the policeman investigating the death that he had been sitting in his apartment on the second floor, watching television, when the child tried to get back into the apartment after having climbed a steep flight of stairs. Defendant said he saw the child grab hold of the screen door, open it, lose her balance, and tumble backwards down the stairs. Second, to a relative of the victim, the defendant told him that he was on his way to pick up the victim's mother carrying the victim down the stairs when she slipped out of his hands and fell down the steps. He later changed his story and reasserted the same story that he had told the investigating police officer. The third account of the incident was a variation on the first account, but that he noted that the screen door was semi-open; he heard a noise; he went to the door and saw the child at the foot of the steps, ran down and picked her up.
The eight assignments of error from which defendant appeals are:
1. The trial court erred in allowing the District Attorney to make substantive amendments to the Grand Jury indictment.
2. The trial court erred in various rulings on defense discovery motions.
3. The trial court erred in admitting allegedly gruesome photographs.
4. The trial court erred in admitting hearsay testimony of State witnesses and restricting defense cross examination of those same witnesses.
5. The trial court erred in permitting an inflamatory opening statement by the State.
6. The trial court erred in allowing the witness to state his opinion, without first qualifying as an expert.
7. The trial court erred in denying a request to instruct the jury on the possible sentence for each responsive verdict in the case.
8. The trial court erred in allowing the State's rebuttal to exceed the scope of defense closing argument and erred further in allowing the State's inflammatory remarks.
Assignments of error numbers one, three, four, five, six and eight do not present any issues of reversible error and will be dealt with in an appendix to this opinion filed and made a part of the official record in this case.
Defendant maintains that the trial court erred in holding that the State's answers to his motion for discovery and inspection were good and sufficient with respect to requests made: (1) to provide the criminal records of State witnesses; (2) with respect to evidence seized and its whereabouts and details concerning its seizure; (3) to provide any exculpatory evidence within the prosecution's possession or control; (4) to provide any written statements necessary to determine whether any inconsistencies in evidence exist which may tend to exculpate defendant; (5) for a list of any oral statements *884 by whomsoever made, within the State's possession. The State responded that defendant was not entitled to any of the requested information. We shall address each of these in order.
Defendant's request for a copy of the criminal record of any and all witnesses to be called by the State is meritless for two reasons; first, the State's witnesses were experienced officials of the Criminal Justice System (a coroner, a forensic laboratory technician, and the arresting and investigating police officers) whose criminal records would, by nature, be nonexistent and therefore automatically exempt; State v. Washington, 407 So.2d 1138, 1143 (La. 1982); The remainder of the State's witnesses being mere civilians, (the victim's mother, grandparents, aunts and uncles) all of whom were in no way connected with the perpetration of the homicide herein.
The instances when prior criminal records are most useful in cross examining a State's witness is when the witness is or was a co-defendant or co-conspirator with the defendant on trial. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); adopted in Louisiana, State v. May, 339 So.2d 764 (La.1976); State v. Washington, supra; and State v. Harvey, 358 So.2d 1224 (La.1978). The right to prior criminal records is almost automatic in these cases. There is no question here, however, that defendant was alone in the commission of these crimes. There was therefore, no reason to require the State to furnish the criminal records of these other witnesses, if any exist, prior to or during trial. None of the civilian witnesses were co-defendants, nor co-conspirators.
Secondly, the defense has no statutory right to request the provision of such information from the State even for the impeachment of the witnesses' credibility. It is irrelevant to the case at bar where all of the witnesses were only observers, not participants.
In State v. Washington, supra, the court ruled, at a pretrial hearing on defendant's motion for discovery, that the Criminal Justice Officials' records, if any, were to be exempt from the discovery request. Further, the trial court stated that it was premature to require the State to furnish the criminal record of the other witnesses at that time, but it might be proper later at trial if the issue resurfaced. At trial, in the instant case, defendant did not go into any prior record of any of the witnesses called. There was never a motion to discover such records during the trial or any attempt to impeach the credibility of any of the witnesses by the mere suggestion of purported existence of a criminal record, nor was there any mention made of any criminal record being in the possession of the State at the time of trial that might have been discoverable. This issue therefore is not properly before this court for review. In order for this assignment of error to serve as a basis for a reversal of defendant's conviction, it would be necessary for defendant to have raised the issue at trial through either cross examination of a witness or by a timely oral motion. His failure to do so, now commands an affirmance. Defendant has not shown to have suffered any harm by the absence of any witnesses' criminal record, if any. We cannot here see how the use of the criminal records of any witness, if they exist, could have created a reasonable doubt of defendant's guilt or otherwise change the outcome of the trial. United States v. Agurs, supra.
In his motion for discovery, defendant had asked if any evidence had been seized in connection with this case. The State responded in the affirmative. Defendant countered by requesting more specific information about the evidence seized, including the time, date and place from which the evidence was obtained, the persons from whom the evidence was obtained and a list in detail of all the evidence obtained. Defendant argues that he is entitled to this information under LSA-C.Cr.P. Arts. 716-719.
*885 Articles 716 and 717 only concern statements made by defendant and defendant's prior criminal record, and therefore are not pertinent to this argument. Articles 718 and 719 refer to "documents and other tangible objects" and to "reports of examinations and tests," respectively. These Articles only require that defendant be allowed to inspect, copy, or photograph those documents or reports that are in the control of the State. They do not require the State to give an itemized list of all evidence in its possession and how each was obtained. See, State v. Landry, 384 So.2d 786 (La.1980). It should also be noted that defendant requested to be allowed to inspect any physical evidence relative to this case. In response, the State asserted that it would be done at defendant's convenience. It appears the State complied with the requirements of Articles 718 and 719 by making this evidence available to defendant. Thus, defendant's argument with regard to paragraphs eight, nine and ten, of his discovery motion is without merit.
Defendant's next point in this assignment of error is that the trial court erred in ruling the State's response to discovery motion paragraphs twenty-two and twenty-three, was good and sufficient. A close reading of these paragraphs indicate that defendant was actually seeking to obtain oral and written statements made by anyone in connection with this case. Discovery of such material is not required. State v. Joseph, 379 So.2d 1076 (La.1980). Defense counsel further points out in his argument in brief that he never received proper (LSA-C.Cr.P.) Art. 768 notice of oral statements made by the defendant. Upon a close review of the record and transcript of trial in this case, we have discerned that defense counsel was apprised that oral statements had been made in the presence of the arresting officers in accordance with Article 768. All oral statements that defense now complains of were made while the defendant was at Charity Hospital in the presence of the arresting and investigating officers and it matters little that there may have been other people present who may have overheard such oral statements. Defense counsel was definitely put on notice, prior to trial, of the State's intent to use any of this information. The record indicates that several people were present at the time defendant made various statements. The record does not indicate to whom any of such statements were specifically directed.
The first statement made by defendant of which defense counsel claims he was given no notice was a statement made to State witness, Tyronne Rochon. Rochon was asked what defendant said as he was being led out of the hospital by the police. The witness responded, "He kept talking about how his sister would be able to tell them she was present at the time." (Tr. p. 180). The State is not required to give notice or to divulge the contents of an oral statement made by the defendant to a private citizen when the State plans to use that evidence at trial. State v. Joseph, supra. The defense had already received notice of statements made in the presence of the officer. The transcript of the trial indicates that the statement was made while in the presence of the policeman. This assignment is without merit.
Defendant further alleges that he should have been provided with the substance of any oral statements made by defendant pursuant to his prayer for oyer or in his motion for discovery and examination. The State in its answer to prayer for oyer and its subsequent amendment thereto, did inform defendant of both the existence and substance of this statement. In addition, the State also advised the defendant of the existence of an oral statement made to "Detective Cannatella and Detective Duke," and also advised defendant of the substance of that statement, as it is required to do under LSA-C.Cr.P.Art. 716(C). The State had informed the defendant that, "the gist of the statement was that the death of the child was accidental in nature and was generally exculpatory." All that is required for notice under the Article is the substance of the statement made. Substance is defined as "the *886 essential element" or "essence" of a thing, and in this case, this requirement has been met.
A reversal based on violation of the discovery articles will not be granted absent a showing of prejudice. See, State v. Arnaud, 412 So.2d 1013 (La.1982). If defendant is lulled into misapprehension of the strength of the State's case as a result of the State's discovery answers and is prejudiced thereby, a reversal would be warranted. State v. Phagans, 412 So.2d 580 (La.1982); State v. Davis, 399 So.2d 1168 (La.1981); State v. Statum, 390 So.2d 886 (La.1980). This court has previously held that where the defendant is lulled into a misapprehension of the strength of the State's case and suffers prejudice when the statements are subsequently introduced at trial, basic unfairness which constitutes reversible error results. However, the State's failure to comply with the discovery procedures will not automatically demand a reversal. Rather, we will examine the circumstances of the case and the trial court's reaction to see if the defendant was prejudiced and if the trial judge was correct. State v. Strickland, 398 So.2d 1062 (La. 1981); State v. Statum, supra.
Defendant now argues that he was prejudiced by the State's failure to advise him of the existence of the statements made to Tyronne Rochon, and of the contents of the statement made to Detectives Duke and Cannatella. In addition to the reasons above stated, we do not see where defense counsel has explained how defendant was prejudiced, nor does it appear that defendant lacked foreknowledge of the existence of these statements, nor has he shown how a lack of knowledge affected his defense strategy. Defendant made numerous timely objections to the introduction of various statements made by defendant to the testifying witnesses. In almost every case, each of these objections was overruled. Defendant then had opportunity to request a mistrial or admonition from the trial court for the State's alleged failure to comply with the rules of discovery, but failed to do so. Further, the defendant had the opportunity of showing any prejudice at the time that the objection was overruled, but also failed to make a showing. The defendant could, in addition, also request statutory sanctions for the State's failure to comply with pretrial discovery and inspection requests as defendant argues in his brief. The defendant failed to seek the remedy of exclusion of these statements to which he allegedly had no notice under LSA-C.Cr.P. Art. 729.5(A). Because sanctions provided in this Article are to be applied in the discretion of the trial court, defendant must show prejudice resulting from an adverse ruling before this court can reverse a conviction. State v. James, 396 So.2d 1281 (La.1981); State v. Norwood, 396 So.2d 1307 (La.1981).
We do not find defendant has been prejudiced in any material degree by the admission of these oral statements into evidence, in view of the other overwhelming evidence of defendant's guilt.

ASSIGNMENT OF ERROR NUMBER 7
Defendant here argues the trial court erred in denying his motion for a special jury charge which would have informed the jury as to the applicable penalty provisions with respect to all the possible responsive verdicts to the crime charged that they could consider.
Defendant was charged with the crime of first degree murder. One of the responsive verdicts was "guilty of second degree murder." Both of these crimes require the imposition of a mandatory sentence. When the penalty to be imposed is a mandatory one, our law requires the trial judge to inform the jury, on request of the defendant, of the penalty and to permit defense counsel to argue the penalty to the jury. State v. Washington, 367 So.2d 4 (La.1978); State v. Prater, 337 So.2d 1107 (La.1976).
Prior to oral arguments, defense counsel moved to have the trial judge charge the jury on the penalty for the charged crime and on all responsive verdicts. The trial judge erroneously denied defendant's motion.
*887 While it is true that the motion regarding the special charge was made orally, and this might have provided a valid reason for denying the motion (La.C.Cr.P. art. 807), this was not the reason stated by the trial judge and, therefore, cannot be upheld for that reason. State v. Henderson, 362 So.2d 1358 (La.1978). However, defense counsel had ample opportunity thereafter to explain the law regarding the penalty provisions to the jury during his closing argument and chose not to do so. Furthermore, in the context of this prosecution, the erroneous ruling was not substantially prejudicial.
The remainder of defendant's assignments of error present no issues warranting reversal of his conviction. These have been dealt with in an appendix to this opinion, made part of the official record in this case.
For the reasons set forth above, this court finds no reversible error has been committed by the trial court and we therefore affirm defendant's conviction of first degree murder while in the perpetration of an aggravated rape and sentence of life imprisonment without benefit of probation, parole or suspension of sentence.
AFFIRMED.
DENNIS, J., dissenting.
I respectfully dissent.
The trial court clearly erred in sustaining the state's blanket refusal to answer discovery request and it cannot be said that there is no reasonable possibility that this error did not contribute to the conviction.
NOTES
[*] Judges Charles R. Ward, Jr., William H. Byrnes, III and David R.M. Williams of the Court of Appeal, Fourth Circuit, participated in this opinion as Associate Justices Pro Tempore with Chief Justice Dixon and Associate Justices Calogero, Dennis and Watson.