777 So.2d 569 (2000)
STATE of Louisiana
v.
Chadwick DENNIS.
No. 00-KA-182.
Court of Appeal of Louisiana, Fifth Circuit.
December 13, 2000.
*570 Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Allison Monahan, Assistant District Attorneys, Gretna, LA, Counsel for the State.
Kenneth J. Beck, Harvey, LA, Counsel for appellant.
Court composed of Judges CHE HARDY, McMANUS and H. CHARLES GAUDIN, Judge Pro Tempore.
McMANUS, Judge.

STATEMENT OF THE CASE
On December 1, 1998, the Jefferson Parish District Attorney filed a bill of information charging defendant, Chadwick Dennis, with one count of aggravated battery in violation of LSA-R.S. 14:34. At his arraignment on December 7, 1998, Defendant pled not guilty.
On December 10, 1998, Defendant filed a motion to suppress confession, identification and evidence. On April 13, 1999, a hearing was held on Defendant's motion to suppress. At the conclusion of the hearing, the trial court denied Defendant's motion to suppress the identification. The trial court also held that the State could use defendant's statement.
On April 21, 1999, a six-member jury was selected and trial was held. At the conclusion of the trial, the jury found Defendant guilty as charged.
On September 24, 1999, Defendant filed a motion for new trial. On June 28, 1999, the trial court heard Defendant's motion for new trial and denied the motion. On November 12, 1999, the trial court sentenced Defendant to imprisonment at hard labor for a term of ten years. Defendant gave oral notice of appeal during sentencing on November 12, 1999 and filed a written motion on November 16, 1999.

FACTS[1]
This case involves a shooting that occurred on August 12, 1998. The shooting took place on Walker Neal Avenue in River Ridge. The shooting was precipitated by an argument between Sean Fisher and Antonio Fenderson. This argument concerned Tabitha Phillips, Fenderson's girlfriend, and Fisher's next door neighbor.
On August 12, Fenderson went to Fisher's to talk to him. While Fenderson was *571 at the Fisher house, an argument erupted between Fenderson, Fisher and Fisher's mother. At this point, Fenderson returned to Phillips' house. Fisher also left after the initial argument and went to his grandmother's house.
Later that night Fisher returned home with his brother-in-law. When he arrived, Fenderson and Defendant were standing outside. Defendant asked which of the two men was Sean, and Fisher stated that he was Sean. When Fisher told Defendant who he was, Defendant shot him. After shooting Fisher, Defendant fled the scene. Fisher later identified Defendant's picture in a photographic lineup, and Defendant was arrested.

ASSIGNMENT OF ERROR NUMBER ONE
As his first assignment of error, Dennis argues that it was error for the trial court to allow the State to present an officer's recollection of an oral statement of Mr. Dennis, when that remembrance was different to that which was previously disclosed to the defense. Defendant argues that he should be granted a new trial because the State failed to inform Defendant prior to its introduction at trial of the substance of an oral statement given by Defendant after his arrest. The State responds that Defendant was adequately informed of the substance of the oral statement and alternatively that there was no prejudice if the notice to Defendant was insufficient.
Defendant's argument centers on an oral statement made by Defendant to Deputy Frank Guttuso after Defendant's arrest. Defendant argues that the State failed to comply with LSA-C.Cr.P. art.716 in using his statement. LSA-C.Cr.P. art. 716 provides in pertinent part that:
C. Upon motion of the Defendant, the court shall order the District Attorney to inform the Defendant of the substance of any oral statement which the state intends to offer in evidence made by the Defendant, whether before or after arrest, in response to interrogation by any person then known to the Defendant to be a law enforcement officer.
LSA-C.Cr.P. art. 716(C).
The statement at issue was the subject of a motion to suppress by Defendant. During the suppression hearing, Deputy Guttuso testified to the substance of the statement as follows:
That he did not do the shooting, that he was always blamed for things that happened in the neighborhood back there. He was aware of the shooting, but he denied any involvement in that shooting. And he was aware that there was a vehicle that was similar to his that was seen fleeing the area.
At trial Deputy Guttuso testified concerning the oral statement given by Defendant as follows:
He stated that he did not do the shooting and that he was not involved. He was not in the area. He stated that everybody knows him in that neighborhood and every time something happens he gets blamed for it. I asked him, well why would people blame you for a shooting a serious crime like that and he had no answer to that. He statedI asked him if he knows the last time he had spoken to his cousin Antonio Fenderson and he stated a couple of days or the day before the actual shooting had occurred. They had talked about sports. He stated that he knewI asked him if he knew about, if he had heard about the shooting and he stated yes, he had heard about it. He had heard that there was a red Altima or maroon Altima that had left the scene and that he has a car like that.
During this testimony, Defendant objected on the grounds that the deputy's trial testimony was different from his testimony at the motion to suppress. Defendant also requested a mistrial which was *572 denied.[2]
On appeal, Defendant argues that the State failed to inform him of the substance of the oral statement as required by LSA-C.Cr.P. art. 716(C) because Deputy Guttuso's testimony at trial went beyond the information provided during the hearing on the motion to suppress.
It is noted at the outset that LSA-C.Cr.P. art. 716 requires that the substance of an oral statement be turned over to a defendant by order of the court upon motion by defendant. In the present case, Defendant did not make a motion under LSA-C.Cr.P. art. 716. Defendant did file a discovery motion, but that motion simply acknowledged that there would be open file discovery and did not specifically request any discoverable material. Consequently, without a discovery motion by Defendant, we can only find that the State was not required under LSA-C.Cr.P. art. 716 to provide Defendant with the substance of the oral statement.
In addition to Defendant's failure to file a discovery motion, it appears that the State did comply with the requirements of LSA-C.Cr.P. art. 716(C). The Louisiana Supreme Court examined the disclosure required under LSA-C.Cr.P. art. 716(C) in State v. Hooks, 421 So.2d 880 (La.1982). In Hooks, the Defendant argued that the State had failed to provide him with the substance of an oral statement. The Louisiana Supreme Court noted that the state had informed the Defendant that, "the gist of the statement was that the death of the child was accidental in nature and was generally exculpatory." State v. Hooks, 421 So.2d at 885. The Supreme Court found that:
All that is required for notice under the Article is the substance of the statement made. Substance is defined as "the essential element" or "essence" of a thing, and in this case, this requirement has been met.
State v. Hooks, 421 So.2d at 885-886.
The Louisiana Supreme Court also faced this issue in State v. Williams, 448 So.2d 659 (La.1984). In Williams, the Defendant contended the trial judge erred in permitting the State to enlarge upon the substance of Defendant's inculpatory statement as supplied to Defendant in response to his pretrial motion for discovery. State v. Williams, 448 So.2d at 665. Pursuant to pretrial discovery, the State responded that the Defendant made the following statement:
He stated he did not break into the residence, but he did remove the screen and Reggie Smith went inside and took some items. He stated he had been in one other residence but couldn't remember where.
State v. Williams, 448 So.2d at 665.
At trial, the officer who heard the statement testified that the Defendant had stated that "he had been at the address on that date." The Defendant interrupted, objecting that the inclusion of the words "on that date" impermissibly expanded the account beyond the ambit of the discovery response. Outside the presence of the jury, the trial judge overruled the objection, holding that, under a commonsense interpretation, the State's discovery response revealed that the Defendant meant his statement to relate to the particular crime for which he was being questioned.
State v. Williams, 448 So.2d at 665.
The Louisiana Supreme Court agreed with the trial court's ruling. The court found that the record showed that the testimony of the officers concerning Defendant's inculpatory statement followed the substance of the statement as provided *573 to Defendant in the state's discovery response.
State v. Williams, 448 So.2d at 666.
In the present case, it appears that Deputy Guttuso's testimony at the suppression hearing did inform Defendant of the substance of the oral statement. Guttuso testified at the suppression hearing that Defendant denied involvement in the shooting, that he was often blamed for things that occurred in the neighborhood, and that a car similar to Defendant's was seen fleeing the area of the shooting. Deputy Guttuso's trial testimony tracked the testimony he gave at the suppression hearing. The only additional fact included in the trial testimony was that Defendant claimed that the last time he spoke with Fenderson was a couple of days before or the day before the shooting and that they discussed sports. It does not appear that this additional testimony affects the substance of the oral statement such that the deputy's testimony is insufficient notice to Defendant under LSA-C.Cr.P. art. 716.
Finally, we note that a reversal based on violation of the discovery articles will not be granted absent a showing of prejudice. State v. Hooks, 421 So.2d 880, 886 (La.1982); State v. Arnaud, 412 So.2d 1013 (La.1982); State v. Rainey, 98-436 (La.App. 5 Cir. 11/25/98), 722 So.2d 1097, 1101, writ denied, 98-3219 (La.5/7/99), 741 So.2d 28; State v. Pardon, 97-248 (La. App. 5 Cir. 10/15/97), 703 So.2d 50.
Louisiana's criminal discovery rules are intended to eliminate unwarranted prejudice arising from surprise testimony and evidence, to permit the defense to meet the State's case, and to allow a proper assessment of the strength of its evidence in preparing a defense. LSA-C.Cr.P. arts. 716-729; State v. Toomer, 395 So.2d 1320 (La.1981); State v. Rainey, 722 So.2d at 1101. When the defendant is lulled into a misapprehension of the strength of the State's case through the prosecution's failure to disclose timely or fully, and the defendant suffers prejudice when the undisclosed evidence is used against him, basic unfairness results which constitutes reversible error. State v. Allen, 94-2262 (La.11/13/95), 663 So.2d 686, 688; State v. Rainey, 722 So.2d at 1101. We have held that admitting evidence without prior discovery, under LSA-C.Cr.P. art. 716(B), will not constitute reversible error if harmless. State v. Grant, 517 So.2d 1151 (La.App. 5 Cir.1987); State v. Durham, 94-1036 (La.App. 5 Cir. 4/16/96), 673 So.2d 1103.
In the present case, Defendant does not demonstrate that he was prejudiced by the State's failure to disclose the substance of his oral statement to Deputy Guttuso. It appears that there was no misapprehension of the strength of the State's case. The State's case consisted of three eyewitnesses to the shooting who identified Defendant as the person who shot Fisher. Given the strength of the eyewitness' testimony, it appears that there was no prejudice to Defendant by the State's failure to disclose that Defendant denied seeing Fenderson on the day of the shooting and that they talked about sports.

ASSIGNMENT OF ERROR NUMBER TWO
As his second assignment of error, Defendant argues that it was error for the jury to convict him of the charge of aggravated battery, when such a conviction is not supported by the weight of the evidence presented at the trial.
Defendant argues that his conviction should be overturned because the State failed to present sufficient evidence that he was the person who shot Fisher. The State responds that the evidence presented was sufficient for a rational trier of fact to find Defendant guilty.
The standard to be used by an appellate court in evaluating the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a *574 reasonable doubt of every element of the crime charged. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and State v. Mussall, 523 So.2d 1305 (La.1988).
In the present case, Defendant was convicted of one count of aggravated battery in violation of LSA-R.S. 14:34, which defines aggravated battery as follows: "Aggravated battery is a battery committed with a dangerous weapon." Battery is defined in LSA-R.S. 14:33 as follows, "Battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another."
Defendant does not argue that the shooting of Sean Fisher did not constitute an aggravated battery. Defendant argues on appeal that the evidence presented at trial was insufficient to support a finding that he was the shooter.
The State presented the testimony of the victim's mother, Joyclyn Phillips. She testified that on August 12, 1998 she was living at 613 Walker Neal with her son, Sean,[3] and daughter, Elisha. Her next door neighbor was Tabitha Phillips, and Phillips' boyfriend at the time was Antonio Fenderson. On the night of August 12, Fenderson came over to her house to speak with Sean and the two men began arguing. At this point Fenderson went back to Tabitha Phillips' house, and Fisher went to his grandmother's house.
Some time later, Defendant arrived at Joyclyn Phillips' house and began arguing with Joyclyn and her daughter outside their home. During the argument, Joyclyn Phillips went inside to call the police and get her gun because she felt that Defendant was going to hurt her daughter. While Joyclyn was inside, her son was shot, but she did not see the shooting. The State then called Elisha Fisher, the victim's sister. She testified that, on the evening of August 12, 1998, she and her mother began arguing with Defendant outside their home. At one point, her mother went inside. While Joyclyn Phillips was inside, Sean Fisher arrived at the house in a car driven by his brother-in-law. When Sean arrived, Defendant asked which of the two men was Sean. Sean told Defendant that he did not have anything to say to him. At this point, Defendant drew a gun and shot Sean. After shooting Sean, Defendant fled.
After the shooting, Elisha Fisher viewed a photographic lineup, which included a picture of Defendant. Elisha Fisher identified Defendant from the photograph as the person who shot her brother.
The State also called Sean Fisher, the victim of the shooting. Fisher testified that he and Fenderson had an argument on August 12, 1998 concerning Tabitha Phillips. After the argument, Fisher left his mother's house and went to his grandmother's house. Later that evening, Fisher returned to his mother's house with his brother-in-law. When he returned, Fenderson was standing outside with Defendant. Defendant asked which of the two men was Sean and he had a gun in his hand. Fisher told Defendant that he was Sean, and Defendant shot him in the chest. Fisher was taken to the hospital.
While he was in the hospital, Fisher was shown a photographic lineup containing a picture of Defendant. Fisher identified Defendant's photograph as being a photograph of the person who shot him.
The State then called Antonio Fenderson. On August 12, 1998, Phillips and Fenderson had gone to see a movie with their son. While at the movie, Sean Fisher paged Phillips. This page upset Fenderson. When Phillips and Fenderson arrived back at Phillips' home after the movie, Fisher came over and spoke with Phillips. Fenderson felt that Fisher was *575 acting strangely, and Fisher made comments to Fenderson as he returned next door. Later, Fenderson went to Fisher's home to find out if there was a problem. This conversation turned into an argument. At this point, Fenderson returned next door.
Fenderson testified that Fisher threatened him as he left. Fisher also told Fenderson that he was going to call his friends to go over to Tabitha Phillips' house. At this point, Fenderson began calling his friends to find someone to "watch my back." In calling around, Fenderson spoke with Defendant. After speaking with Fenderson, defendant went to Tabitha Phillips' house. Fenderson and Defendant were outside talking when a group of men arrived in a white car and stayed for a while before leaving.
Fenderson and Defendant were leaving when Fisher came back home. Fenderson testified that Fisher made comments when he arrived. Fenderson told Defendant not to worry about the comments. Fenderson then began to get into his car. As he was getting into his car, Fenderson heard a click and saw Tabitha Phillips fall down. Fenderson did not see the shooting or hear a gunshot.
The State called Tabitha Phillips. On August 12, 1998, she went to the movies with Fenderson and their child. After they arrived home, Fenderson and Fisher got into an argument. After the argument, Fenderson left and returned with defendant. Fenderson, Defendant, Joyclyn Phillips and Elisha Fisher began arguing.
Later, Fisher arrived at his mother's house with his brother-in-law. Defendant asked the two men who was Sean. Fisher told Defendant that he was Sean and Defendant shot Fisher.
The State then called Deputy Frank Guttuso. He testified that he prepared a photographic lineup in this case. He showed the lineups to both Fisher and his sister. Both selected Defendant's photograph as being the photograph of the person who shot Fisher. Guttuso also testified that, after Defendant was arrested and informed of his rights, Defendant told him that he was not involved in the shooting, that he was always blamed for things that took place in that neighborhood, that he had not seen Fenderson for at least a day before the shooting, and that a car similar to his had been seen leaving the area of the shooting.
The final State witness was Deputy Derrick McGhee of the Jefferson Parish Sheriff's Office. He testified that on October 6, 1998 he had just left a computer class when Elisha Fisher flagged him down. During their conversation, Elisha Fisher pointed to a red Altima being driven by Defendant. Defendant then looked at them. McGhee turned to follow Defendant and saw him being arrested by a Kenner Police Officer.
Defendant did not put on new witnesses, but recalled Tabitha Phillips and Joyclyn Phillips to the stand. Tabitha Phillips testified that she visited Fisher in the hospital after the shooting. She testified Fisher did not ask her about the shooting because he knew who shot him. Joyclyn Phillips testified that Elisha Fisher was there when the shooting occurred.
On appeal, Defendant points out that Joyclyn Phillips was not outside when the shooting occurred. Defendant then attacks the testimony of Elisha Fisher. He includes in his brief an excerpt from her testimony in which she states that she did not know Defendant's name at the time of the shooting, but was told his name later. Defendant does not make an argument based on this testimony, but simply reprints a portion of the trial testimony. It is noted that Elisha Fisher positively identified Defendant as the shooter in a photographic lineup. She also identified Defendant as the shooter at trial.
Defendant then attacks the identification made by the victim claiming that the victim was distracted. Defendant also argues *576 that the victim's identification was unreliable because he could not tell whether Defendant had gold teeth, scars, or the type of shirt he was wearing. It is noted that the victim did not testify that he was distracted at the time of the shooting. In fact, Fisher testified that Defendant "was in his face" when he shot him. He further testified that Defendant shot him at "point blank range." Additionally, the victim did testify about the clothes that Defendant was wearing and the style of his hair. Finally, the victim identified Defendant as the shooter in a photographic lineup and at trial.
Defendant also attacks the testimony of Tabitha Phillips. In a statement to police she stated that the person who shot Fisher was Fenderson's cousin, but that she only knew him by the name Mooky. At trial Tabitha Phillips denied that she knew anyone by the name of Mooky and that she told the police that the shooter's name was Mooky. However, at trial she testified that there was no doubt in her mind that Defendant shot Fisher.
Based on the uncontradicted eyewitness testimony, it appears that the State presented sufficient evidence to support the jury's finding that Defendant committed an aggravated battery by shooting Sean Fisher.

ASSIGNMENT OF ERROR NUMBER THREE
As his final assignment of error, Defendant argues that it was error for the jury to convict him when the statute under which he was charged is unconstitutionally broad in scope.
Defendant argues that LSA-R.S. 14:34 is unconstitutionally broad because the statute does not allow for consent of the victim. The State responds that the statute is not unconstitutionally broad.
Defendant first raised the constitutionality of the aggravated battery statute in a motion for new trial. However, validity of a statute is not one of the grounds listed in LSA-C.Cr.P. art. 851 for the granting of a motion for new trial.[4] Despite Defendant's use of the improper procedural vehicle, however, review of this issue is mandated under Louisiana Supreme Court's ruling in State v. Hoofkin, 596 So.2d 536 (La. 1992). In Hoofkin, the Court stated that:
This Court has consistently held that the facial unconstitutionality of a statute on which a conviction is based is an error discoverable by the mere inspection of pleadings and proceedings, without inspection of the evidence, which is subject to appellate review under LSA-C.Cr.P. art. 920, even though the Defendant did not raise the issue in the trial court and did not comply with the assignment of error procedure in LSA-C.Cr.P. art. 844 or with the contemporaneous objection rule of LSA-C.Cr.P. art. 841. State v. Green, 493 So.2d 588, 590 (La.1986); State v. Lee, 364 So.2d 1024 (La.1978); State v. Wrestle, Inc., 360 So.2d 831 (La.1978); State v. Stewart, 325 So.2d 828 (La.1976), cert. denied, 425 U.S. 997, 96 S.Ct. 2213, 48 L.Ed.2d 822 (1976); State v. Williams, 322 So.2d *577 177 (La.1975); State v. Dillard, 320 So.2d 116 (La.1975).
State v. Hoofkin, 596 So.2d at 536. See also State v. Ganier, 94-2582 (La.App. 4 Cir. 8/23/95), 660 So.2d 928 (in which the court reviewed an overbreadth challenge pursuant to Hoofkin).
The Louisiana Supreme Court stated in State v. Cinel, 646 So.2d 309 (La.1994),
Overbreadth doctrine has wide-ranging effects, for a statute found to be substantially overbroad is subject to facial invalidation. It is strong medicine, to be applied sparingly and only as a last resort. Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973).
State v. Cinel, 646 So.2d at 312.
The Louisiana Supreme Court in State v. Brown, 648 So.2d 872 (La.1995) examined the application of the overbreadth doctrine and found that:
In order for the principle of overbreadth to apply, a constitutionally protected right must be claimed as a defense. State v. Azar, 535 So.2d 441 (La. App. 3d Cir.1988), quoting State v. Griffin, 495 So.2d 1306 (La.1986). Furthermore, it is generally inappropriate to invalidate a statute on the grounds of overbreadth when it affects conduct rather than speech, especially where the conduct at issue is harmful and controlled by criminal laws. State v. Watson, 529 So.2d 94 (La.App. 4th Cir.1988); citing Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); State v. Neal, 500 So.2d 374 (La.1987). In Neal, this Court stated that facial overbreadth adjudication is an exception to traditional rules of practice. Thus, for a facial challenge to apply "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Broadrick, supra, 413 U.S. at 615, 93 S.Ct. at 2918.
State v. Brown, 648 So.2d 872 at 878.
In the present case, Defendant claims that LSA-R.S. 14:34 is overbroad because it does not require that the battery occur without the consent of the victim. The aggravated battery statute affects conduct, not speech. Additionally, the conduct at issue in this case is the shooting of another person. This conduct is plainly the type of harmful conduct that LSA-R.S. 14:34 seeks to regulate. Therefore, Defendant's claim that LSA-R.S. 14:34 is overbroad is without merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following matter was noted.
The commitment states that Defendant was informed of the prescriptive period for post-conviction relief, but the sentencing transcript does not show that Defendant was so informed. Where there is a discrepancy between the transcript and the minute entry, the transcript will prevail. State v. Lynch, 441 So.2d 732 (La.1983).
Under LSA-C.Cr.P. art. 930.8(C), the trial court must at the time of sentencing inform the defendant of the prescriptive period for post-conviction relief. Accordingly, we will remand this matter to the district court in order that the district court may inform the Defendant of the provisions of LSA-C.Cr.P. art. 930.8(C) by sending appropriate written notice to the Defendant within ten days of the rendition of this Court's opinion and then file written proof that Defendant received the notice in the record of the proceedings. State v. Kershaw, 94-141 (La.App. 5 Cir. 9/14/94), 643 So.2d 1289; State v. Hall, 95-1073 (La.App. 5 Cir. 4/16/96), 673 So.2d 1127.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] A more complete recitation of the facts is included in the discussion of assignment of error number two.
[2] It is noted that during the trial, defense counsel argued that Deputy Guttuso's testimony at the hearing on the motion to suppress did not include defendant's statement that a car similar to his was seen leaving the scene of the shooting. However, a comparison of the testimony reveals that Deputy Guttuso did testify during the motion to suppress that Defendant stated that a car similar to his was seen in the area.
[3] It is noted that the trial transcript spells the victim's name as both "Shawn" and "Sean." During the victim's testimony, the victim's name is spelled "Sean," so this memorandum uses the Sean spelling throughout.
[4] LSA-C Cr.P.art. 851 provides in pertinent part that:

The court, on motion of the Defendant, shall grant a new trial whenever:
(1) the verdict is contrary to the law and the evidence;
(2) the court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) trial as a matter of strict legal new and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) the defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, not withstanding the exercise of reasonable diligence by the Defendant, was not discovered before the verdict or judgment; or
(5) the court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new right.