795 So.2d 495 (2001)
STATE of Louisiana
v.
Shawn R. WARE.
No. 01-KA-194.
Court of Appeal of Louisiana, Fifth Circuit.
August 28, 2001.
*497 David J. Motter, Metairie, Louisiana, for defendant-appellant.
*498 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Alison Wallis, Frank Brindisi, Jon Maestri, Assistant District Attorneys, Twenty-Fourth Judicial District, Gretna, Louisiana, for plaintiff-appellee.
GULOTTA, Judge.
The defendant, Shawn R. Ware, was convicted of illegal possession of a firearm by a convicted felon, and sentenced to ten years in prison. He has appealed his conviction.

FACTS:
On January 27, 2000, the defendant's landlord obtained a judgment of eviction ordering the defendant and his girlfriend to vacate the property they had leased at 3352 Antoine Wattigny Boulevard in Kenner. The landlord, Joseph LeVoy, went to the residence on Saturday, January 29, 2000, accompanied by Officer Jeff Melancon of the Kenner Police Department, to execute the eviction order. They entered the residence and found no one in the house. While in the master bedroom of the three-bedroom house, Mr. LeVoy noticed a deadbolt on one of the closet doors. Mr. LeVoy testified at trial that the deadbolt was not on the closet door when he rented the house to the defendant on November 13, 1999. After Mr. LeVoy removed the lock and opened the closet door, he noticed a handgun tucked in between shirts that were stacked on a rack in the closet. According to Mr. LeVoy, there were no women's clothing inside of the closet. Officer Melancon testified at trial that he was informed that the gun was not stolen and that the defendant did not have any qualifying felony convictions that would make it illegal for the defendant to have a gun. Thereafter, Mr. LeVoy and Officer Melancon left the house.
On Monday, January 31, 2000, Mr. LeVoy returned to the house with the constable, who inventoried all of the property in the house. They entered the house and found no one inside the house. Mr. LeVoy packed up all of the belongings and put everything by the curb. Shortly after the property was placed outside, however, people began taking the furniture and personal possessions. Mr. LeVoy testified that he rented a U-Haul truck and took the defendant's property to his garage to protect the defendant's belongings. Mr. LeVoy testified that he later told the defendant he could retrieve his property at any time, but that the defendant never came to claim them.
Mr. LeVoy testified that sometime between January 29, 2000 and January 31, 2000, the police informed him that the defendant did indeed have a prior conviction that made it a crime for him to possess a gun. Mr. LeVoy met the police at the house, who then seized the gun.
The defense's theory of the case was that the defendant was not in possession of the gun, because he had moved out of the house approximately a month before the gun was found. The defendant's mother, Lorraine Ware, her neighbor, James Echols, the defendant's wife, Latoia Ware, and her friend, Antrenet Johnson, all testified on the defendant's behalf. Latoia Ware testified that Shawn Ware had moved out of the house on December 1, 1999 because they had a disagreement. However, she said that he did not take all of his belongings. Latoia Ware said that she had placed the locks on several of the closet doors, including the one with the deadbolt, because of her five-year-old daughter, who also resided in the house.
Latoia Ware claimed that the gun belonged to a male friend, Terrence Williams, who moved in the house in early January. She stated that Williams left in mid-January without any of his belongings or his gun. According to Latoia, Williams *499 left the gun upon her request for her protection. She said that Shawn had no keys to the residence and never returned after leaving in December. On cross-examination, Latoia testified that she and Shawn got married on March 18, 2000.
A female friend of Latoia's, Antrenet Johnson, testified that she moved in with Latoia on January 14, 2000 and lived there for a few months. According to Ms. Johnson, the defendant did not live there during this time.
Lorraine Ware, the defendant's mother, testified that the defendant lived with her in December of 1999. Lorraine Ware's neighbor, James Echols, corroborated Ms. Ware's testimony that the defendant moved in with her in December 1999.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error, defendant contends that the evidence presented at trial was insufficient to prove he possessed the firearm, an essential element of the offense. The State contends that it proved beyond a reasonable doubt that the defendant was in constructive possession of the gun.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291.
The requirement of LSA-R.S. 15:438 regarding circumstantial evidence does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt.[1] Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Jones, 98-842 (La.App. 5 Cir. 2/10/99), 729 So.2d 57. To convict a defendant of illegal possession of a firearm by a convicted felon, the State must prove the following elements beyond a reasonable doubt: (1) possession of a firearm; (2) conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and (4) general intent to commit the offense. LSA-R.S. 14:95.1; State v. Husband, 437 So.2d 269, 271 (La.1983). Constructive possession is sufficient to satisfy the element of possession. State v. Mose, 412 So.2d 584 (La.1982). The determination of whether there is "possession" sufficient to convict depends on the particular facts of the case. State v. Trahan, 425 So.2d 1222, 1226 (La.1983).
The defendant claims that he could not have had constructive possession of the gun found in the master bedroom closet because the trial evidence showed that he had moved out of the home almost a month before the gun was recovered. He relies on several cases that have held the evidence was insufficient to establish the defendant was in constructive possession of a firearm.
The common thread through the cases cited by defendant is that a defendant's mere presence in an area with a firearm, or presence in an area plus knowledge that someone else has a firearm, is insufficient *500 to establish constructive possession. In State v. Heacox, 543 So.2d 101 (La.App. 3 Cir.1989), the gun was partially covered by a holster, and it was lying on the seat equidistant between defendant and the driver of the vehicle. The gun belonged to the mother of the driver. In reversing the defendant's conviction, the Third Circuit noted that there was no evidence to show that the defendant was aware that the gun was in the vehicle, or that if he was aware of its presence "there is no evidence that Heacox's intent amounted to an intent to possess rather than mere acquiescence to the fact that [the driver] had a gun in his truck." Id. at 106.
In State v. Evans, 29,675 (La.App. 2 Cir. 9/24/97), 700 So.2d 1039, writ denied, 97-2942 (La.1/9/98), 705 So.2d 1121, the gun was found under the front passenger seat after defendant consented to a search of the vehicle he was driving. The evidence at trial revealed that the defendant had attended a barbecue at his aunt's house earlier that evening. Defendant, one of his cousins (Brewster), and another man (the co-defendant in the case), went riding around in another cousin's car. Unbeknownst to defendant, Brewster brought along his gun, which he later placed under the passenger seat. Defendant dropped Brewster off, and the vehicle was subsequently stopped by the police. The Evans court reversed the convictions of the defendant and co-defendant because there was no evidence they were aware of Brewster's gun under the seat. Id. at 1043-1044.
Finally, in State v. Fisher, 94-2255 (La. App. 1 Cir. 12/15/95), 669 So.2d 460, writ denied, 96-0958 (La.9/20/96), 679 So.2d 432, the gun was found in defendant's sister's purse after a consent search of the vehicle defendant was driving. The evidence revealed that the defendant knew his sister had a gun in her purse, and defendant even had the clip in his pocket. However, the court concluded that the evidence disclosed no intent to possess the gun, but only a mere acquiescence to the fact that his sister owned a gun and had it in her purse. Id. at 462.
These cases are factually different from the present case in that the firearms in these cases belonged to someone else and were found in areas not belonging to the defendant or under his dominion and control. When a gun is found in an area that the defendant has customarily occupied, the courts have generally found this to be evidence of constructive possession. In State v. Jackson, 97-1246 (La.App. 5 Cir. 4/13/98), 712 So.2d 934, 937-938, writ denied, 98-1454 (La.10/16/98), 726 So.2d 37, this Court found the defendant had constructive possession of a gun that was found under the bed where defendant slept. The defendant's mother, who also lived in the house, denied that the gun was hers. Although the defense sought to show the gun could have belonged to someone other than the defendant by presenting the testimony of his mother that other relatives had recently stayed in defendant's bedroom while visiting, this Court observed that the jury apparently gave little credence to the defense testimony in convicting the defendant. Because the gun was found under the defendant's bed, this Court stated that the defendant had easy access to it, and, therefore, the evidence was sufficient to show he possessed the gun.
In State v. Lewis, 535 So.2d 943 (La. App. 2 Cir.1988), writ denied, 538 So.2d 608 (La.1989), cert. denied, 493 U.S. 963, 110 S.Ct. 403, 107 L.Ed.2d 370 (1989), the defendant contended he was unaware of three guns found in his house because he had been out of town in the days prior to the execution of the search warrant where the guns were found. He also argued that *501 his wife had the guns for her protection. A shotgun was in an occupied bedroom, a 9-mm. pistol was in the master bedroom closet, and another gun was in a dresser drawer in the den. The Second Circuit reasoned that the jury was entitled to reject the defendant's defense because "[t]he location and type of weapons found in defendant's residence coupled with the statement by defendant that the 9-mm. pistol belonged to his wife, plus the presence of the shoulder holster in the master bedroom, strongly indicate defendant's awareness, dominion, and control over the firearms." State v. Lewis, 535 So.2d at 950.
As in Lewis and Jackson, there is evidence in this case that indicates that the defendant was in constructive possession of the gun. Mr. LeVoy testified that when the defendant and Latoia Ware moved into the house, he heard the defendant tell Ms. Ware that the larger closet in the master bedroom (where the gun was found), was to be his closet, since he had more clothes. Mr. LeVoy further testified that the closet in which the gun was found was filled with men's clothing and approximately 50 to 75 pairs of Nike Tennis shoes. In connection with Mr. LeVoy's testimony a photograph of the closet containing the clothing was introduced into evidence. Mr. LeVoy further testified that he had last seen the defendant at the house on January 4, 2000 when Mr. LeVoy went there to repair an element in the stove. Although Mr. LeVoy did not see the defendant at the house again after January 4, Mr. LeVoy said that the defendant had called him several times after January 4, and that he knew the defendant had called from the house because the telephone number from that residence was displayed on Mr. LeVoy's Caller ID. Further, although the defendant's wife said he never returned to the residence once he left in December, the defendant's mother said he had visited his wife at the home. Additionally, the State introduced a photograph of the defendant dated 1/28/00, the day before Mr. LeVoy found the gun, which Mr. LeVoy stated he recognized to be taken inside of the house.
The jury was required to evaluate evidence that supported both the State's and the defendant's theory of the case. The State contended that defendant had lived at the residence he rented with his wife, or at least frequented the residence enough, so that it was reasonable to conclude that he was in constructive possession of a gun found in his closet filled with his shoes, clothing, and other personal belongings. The defense contended that defendant had vacated the premises long before the weapon was found, and therefore could not have known about its presence in his closet. Where there is conflicting testimony as to factual matters, the question of credibility of witnesses is within the sound discretion of the trier of fact. State v. Price, 94-214 (La.App. 5 Cir. 1/31/95), 650 So.2d 360, 363. Here, the jury made a credibility determination and believed the testimony of the State's witnesses rather than the defense witnesses' testimony. We find that there was sufficient evidence for the jury to conclude beyond a reasonable doubt that the defendant was in constructive possession of the gun found in his closet.

ASSIGNMENTS OF ERROR NUMBERS TWO, THREE, AND FOUR
In these assignments, the defendant contends that the trial judge should have granted his motion in limine to exclude the physical evidence shown to him for the first time on the morning of trial. He further contends that the trial judge should have granted his alternative motion to continue the trial because he did not have a chance to review the evidence, some of which placed the defendant at the house *502 the day before the eviction. The State responds that the trial judge properly denied both motions because the defendant did not make or file any pre-trial discovery motions, which would have compelled the State to produce the evidence for inspection before trial. The State further responds that the defendant was not prejudiced by the introduction of this evidence, since the items belonged to him.
On November 29, 2000, before the jury was selected, the defense made an oral motion in limine to exclude several items that the State intended to introduce as evidence at trial. Defense counsel told the court that he reviewed the State's file pursuant to open file discovery at the last court date, which the record reflects to be November 2, 2000. According to the defense, none of the proposed evidence was listed on the Kenner Police Report or on any of the other documents in the file. Defense counsel moved to exclude these items, contending he was surprised by the State's production of them on the morning of trial.
The prosecutor responded that these items were the personal possessions that had been removed from the defendant's closet by Mr. LeVoy, that Mr. LeVoy had these items, not the State, and further that the defense had not made or filed any motion seeking discovery of physical evidence the State intended to introduce. The prosecutor further responded that the defense should not have assumed that the State intended to introduce only the evidence listed as seized from the defendant's home on the Kenner Police Report, and that if the defense had filed the proper discovery motion, the State would have been obliged to disclose the items earlier.
The prosecutor then explained that the State intended to introduce these items, which consisted of credit cards, a lease in the defendant's name, and clothing taken from inside of the closet, to establish the elements of the defendant's knowledge and intent. After the clerk verified that the record contained no discovery motions filed by the defense, the trial judge denied the motion in limine.
Louisiana Code of Criminal Procedure article 718 provides that the court shall order the State to allow the defendant to inspect, examine, copy, test, etc., documents and tangible objects that are intended for use by the State as evidence at trial or were obtained from or belong to the defendant upon motion by defendant. Article 729.5 provides for sanctions if the discovery articles are violated. These sanctions include prohibiting the introduction of evidence, or the granting of a continuance. The record in the present case does not contain any discovery motions made by the defendant.
In State v. Dennis, 00-182 (La.App. 5 Cir. 12/13/00), 777 So.2d 569, 572, the defendant complained that the trial judge improperly permitted a State witness to testify at trial about an oral statement made by the defendant when the State failed to disclose the substance of the statement. There, the defendant had filed a discovery motion, but the motion simply acknowledged that there would be open file discovery and did not specifically request any discoverable material. This Court concluded that "without a discovery motion by Defendant, we can only find that the State was not required under LSA-C.Cr.P. art. 716 to provide Defendant with the substance of the oral statement." Id. at 572.
In the case before us, we find that the State was not obligated to notify the defendant of the physical evidence it intended to introduce because the defendant had not filed a motion pursuant to LSA-C.Cr.P. art. 718. Further, since the defendant *503 failed to file a motion, he was not entitled to avail himself of the remedies provided by LSA-C.Cr.P. art. 729.5, which include a continuance or exclusion of the evidence.

ASSIGNMENT OF ERROR NUMBER FIVE
In this assignment of error, the defendant contends that the trial court erred in denying his motions for mistrial because Mr. LeVoy and Officer Melancon made references to impermissible other crimes alleged to have been committed by the defendant. The State responds that the trial judge properly denied the defendant's motions.
The defendant complains that the State elicited impermissible other crimes evidence from Mr. LeVoy regarding the defendant's overcharging him to have the stove repaired. This occurred when the prosecutor asked Mr. LeVoy if "there was a dispute as to a repair bill that was conducted inside the house?" In response, Mr. LeVoy answered that on January 4, 2000, the defendant informed him that the element in the stove had broken. According to Mr. LeVoy, the defendant asked whether Mr. LeVoy wanted defendant to have it repaired, but Mr. LeVoy told the defendant he would fix it himself. However, Mr. LeVoy burned his hand while attempting to remove the element, and he asked the defendant to have it fixed because Mr. LeVoy needed medical attention for his hand. Mr. LeVoy told the defendant to telephone Mrs. LeVoy after the stove had been repaired, and that she would stop by and reimburse the defendant for the cost. Later that day, the defendant told Mrs. LeVoy the repair bill was approximately $600.00. Although the defendant did not have a receipt, she wrote him a check in that amount.
Mr. LeVoy testified that immediately after Mrs. LeVoy relayed these events to him, Mr. LeVoy telephoned the defendant to find out why the bill was so high. Mr. LeVoy said he believed an element cost about $35.00, and even if the labor was $200.00, $600.00 was much too expensive. During this conversation, the defendant provided the name of the company who had repaired the stove. Mr. LeVoy telephoned the company the next morning and was told that the estimated cost to repair the stove was $260.00, that the work had not been performed because the part was not in stock, and that they only received $43.00 in payment on a credit card. Mr. LeVoy said he stopped payment on the check and confronted the defendant about these discrepancies. According to Mr. LeVoy, the defendant blamed the repairman for trying to "rip him off." Later in direct examination, Mr. LeVoy stated he reported the incident regarding the stove to the Kenner Police Department. The defendant never objected while Mr. LeVoy recounted these events, hence this issue was not preserved for appeal.
The defense objected and moved for a mistrial after the following testimony by Mr. LeVoy:
A. On the Saturday following the time that I got the ejection orderI got the ejection order on a Thursday and it washe had 24 more hours to leave the house.... And of course I couldn't get a constable or anyone to come out and evict him on a weekend. So I was going to let it go until Monday and just contact the constable and have the constable meet me to do the actual ejection.
On Saturday, I received my bank statement in the mail and there were two electronic transfers from my bank account 
MR. MOTTER (defense counsel):

*504 Your Honor, objection, Your Honor. I don't know where he's going but you may want to get the jury out.
A bench conference was held and the defense moved for a mistrial. The prosecutor explained to the trial judge that the reason Mr. LeVoy had contacted the police department on Saturday was that Mr. LeVoy discovered the defendant had taken two checks from Mr. LeVoy's checkbook and had made some kind of electronic transfer that showed up on Mr. LeVoy's bank statement. The prosecutor argued these events were res gestae. The defense responded as follows: "Your Honor, I'm making a motion for a mistrial. I let the first part go where he told about he made the Kenner police report." After more argument by the State and defense, the trial judge denied the mistrial motion.
Regarding Mr. LeVoy's testimony about the stove, it does not appear that the defense made a timely objection. The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity so that he may cure the problem, and to prevent the defendant from gambling on a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection. LSA-C.Cr.P. art. 841; State v. Thomas, 427 So.2d 428, 433 (La.1982); State v. Snyder, 97-226 (La.App. 5 Cir. 9/30/97), 700 So.2d 1082, 1087. Since there was no timely objection or timely mistrial motion to Mr. LeVoy's testimony regarding the stove, this issue has not been preserved for appellate review.
The defendant also claims that the trial judge improperly failed to grant the mistrial because Mr. LeVoy said that the "defendant somehow stole money from his checking account." Defendant contends that Mr. LeVoy's testimony constituted an impermissible reference to other crimes and that a mistrial was mandated by LSA-C.Cr.P. art. 770. That article provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
* * *
As a general rule, Article 770 does not apply to testimony by a State witness, since a witness is not considered a "court official" for purposes of the article. However, the jurisprudence provides that an impermissible reference to another crime deliberately elicited by the prosecutor would be imputable to the State and would therefore trigger the provisions of Article 770. State v. Girod, 96-660 (La. App. 5 Cir. 11/25/97), 703 So.2d 771, 775, writ denied, 98-0244 (La.6/19/98), 719 So.2d 480. The article also provides that a defendant may move the court to simply admonish the jury to disregard the objectionable comment. However, the reference must be to other crimes committed or alleged to have been committed by the defendant. State v. Girod, supra. Moreover, a mistrial is a drastic remedy which should be declared only when unnecessary prejudice results to the accused. State v. Carter, 96-358 (La.App. 5 Cir. 11/26/96), 685 So.2d 346, 350.
Even if we were to impute this testimony to the State, the complained of testimony does not refer to any crime allegedly committed by the defendant. Mr. LeVoy did not state or imply that the *505 defendant had taken checks and made unauthorized transactions. Once the objection was made, Mr. LeVoy did not continue this line of testimony. In fact, the record reflects that the defense later acknowledged that Mr. LeVoy had not implicated the defendant in the electronic transfer. When the prosecutor asked defense counsel if Mr. LeVoy had mentioned the electronic transfer, defense counsel answered that he had "stopped him [Mr. LeVoy] before he got there." Because the testimony did not implicate the defendant in another crime, a mistrial was not mandatory.
Defendant further contends that the trial judge improperly denied his second mistrial motion made during direct examination after Officer Melancon stated that he told Mr. LeVoy that the defendant had a qualifying felony conviction that made it illegal for defendant to possess a firearm. Defendant did not object to this testimony. Later during direct examination, Officer Melancon testified as follows:
Q. (by the prosecutor):
And after finding out that the defendant was a convicted felon in possession of a firearm, did you issue an arrest warrant?
A. (Officer Melancon):
At that time, welike I said, we were working another case for him and once we learned that he was convicted of that
Immediately thereafter at a bench conference, the defense moved for a mistrial.
Regarding the first instance that Officer Melancon referred to the defendant's prior felony conviction, the defendant did not object and therefore this instance was preserved for appellate review. In any event, Officer Melancon did not mention anything other than the fact that the defendant had been convicted of a prior qualifying felony, which is an element of illegal possession of a firearm by a convicted felon. See LSA-R.S. 14:95.1.
Although the defendant timely objected and moved for a mistrial after the second time Officer Melancon mentioned the defendant's prior conviction, it appears that the trial judge properly denied the mistrial motion. First, a mistrial was not mandatory under Article 770 because the State did not elicit the answer, since the officer's answer was not responsive to the question. Thus, the discretionary provisions of LSA-C.Cr.P. art. 771 apply.[2] Second, because Officer Melancon did not mention that the investigation involving the defendant was criminal, it does not appear that the reference was to another crime alleged to have been committed by the defendant. A mistrial is a drastic remedy which should be declared only when unnecessary prejudice results to the accused. State v. Banks, 96-2227 (La.4/18/97), 692 So.2d 1051, 1052, on remand, 95-1210 (La.App. 3 Cir. 6/25/97), *506 699 So.2d 418; State v. Carter, 685 So.2d at 350. Additionally, "prejudice assessments and rulings on mistrial motions fall to the sound discretion of the trial court." State v. Broaden, 99-2124 (La.2/21/01), 780 So.2d 349, 361. Under these circumstances, we find that the trial judge did not abuse his discretion in denying the mistrial motion.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The record reflects that the trial court failed to completely advise defendant of the prescriptive period for filing postconviction relief pursuant to LSA-C.Cr.P. art. 930.8 in that he failed to indicate when the period began to run. Therefore, this matter is remanded to the district court and ordered to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending written notice to the defendant within ten days of the rendition of this Court's opinion and to file written proof that defendant received the notice in the record. See State v. Gibson, 97-1203 (La. App. 5 Cir. 3/25/98), 708 So.2d 1276, 1281.
For the foregoing reasons, the defendant's conviction is affirmed and this matter is remanded for the limited purpose of informing the defendant of the time period within which to seek post conviction relief.
CONVICTION AFFIRMED; REMANDED.
NOTES
[1] LSA-R.S. 15:438 provides that "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."
[2] Article 771 provides that:

In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.