# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1020

**STATE OF LOUISIANA**

**VERSUS**

**WILLIE R. PITTS**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 49,767
HONORABLE DURWOOD W. CONQUE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## OSWALD A. DECUIR
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Oswald A. Decuir, Jimmie C. Peters, and J. David Painter, Judges.

**CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.**

**Michael Harson**
**District Attorney**
**Fifteenth Judicial District Court**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

**Bart J. Bellaire**
**Assistant District Attorney**
**Fifteenth Judicial District Court**
**100 N. State Street, Suite 215**
**Abbeville, LA 70510**
**(337) 898-4320**
**COUNSEL FOR APPELLEE:**
       **State of Louisiana**

**Annette Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
       **Willie R. Pitts**

**Willie R. Pitts**
**IN PROPER PERSON**
**Rayburn Correctional Center**
**27268 Hwy. 21, North**
**Rain 2**
**Angie, LA 70426**

**DECUIR, Judge.**

The Defendant, Willie R. Pitts, was indicted by a grand jury with aggravated rape, a violation of La.R.S. 14:42. Following a bench trial, he was found guilty of the lesser offense of forcible rape, La.R.S. 14:42.1. The Defendant, fifty-two years old at the time of the offense, was sentenced to serve forty years at hard labor, the first two years without benefit of probation, parole, or suspension of sentence. The Defendant is now before this court on appeal, challenging his conviction in four assignments of error. For the following reasons, we affirm the Defendant's conviction and sentence and remand with further instructions.

## ASSIGNMENT OF ERROR NO. 1:

By this assignment of error, the Defendant argues that the evidence introduced at trial was insufficient to prove all of the elements of the offense of either forcible rape or the charged offense of aggravated rape. The Defendant complains that details of the sexual encounter were necessary to determine if penetration occurred; thus, "Merely answering the question of whether he forced himself inside her that day was insufficient to show penetration occurred." The Defendant also maintains that the degree of force used during the offense is at issue–the testimony was insufficient to show the victim was prevented from resisting. Lastly, the Defendant contends the victim's testimony is vague, inconsistent with other testimony, and shows she had a motive to make false accusations.

The analysis for a claim of insufficient evidence is well-settled:

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Mussall*, 523 So.2d 1305 (La.1988). A determination of the weight of evidence is a question of fact, resting

solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. *State v. Silman*, 95-0154 (La. 11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. *State v. Bordenave*, 95-2328 (La. 4/26/96), 678 So.2d 19, 20. It is not the function of an appellate court to assess credibility or re-weigh the evidence. *Id.*

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86.

A victim's or witness's testimony alone is usually sufficient to support the verdict, as appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency. *State v. Davis*, 02-1043, p. 3 (La.6/27/03); 848 So.2d 557, 559. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion. *State v. Robinson*, 02-1869, p. 16 (La.4/14/04); 874 So.2d 66, 79.

*State v. Dorsey*, 10-216, p. 43-44 (La. 9/7/11), 74 So.3d 603, 634[1]; *see also State v. Simon*, 10-1111 (La.App. 3 Cir. 4/13/11), 62 So.3d 318, *writ denied*, 11-1008 (La. 11/4/11), 75 So.3d 922.

Forcible rape is defined in La.R.S. 14:42.1(A), which reads in pertinent part:

A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:

(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

The following facts were adduced at trial. The victim testified she was vaginally raped by the Defendant in July 2008, just days after her thirteenth birthday. At the time of the offense, she was living with her aunt, G.C.[2] and the Defendant, who was G.C.'s boyfriend. She could not recall the exact date of the offense but believed she reported the offense two days after it occurred. The victim explained that the Defendant burst through her bedroom door, violently

---

[1] Petition for certiorari filed January 19, 2012.
[2] Pursuant to La.R.S. 46:1844(W), initials are used to protect the victim's identity.

2

cursing at her and slapping her face with big rings on his fingers. She reacted by kicking him and trying to push him away, but eventually he grabbed a knife and stabbed at the bed as she struggled to get away from him. She testified that he forced himself inside of her and had sex with her. The victim said she kept a knife in her room because she was afraid of the Defendant.

With regard to previous incidents, the victim stated that the Defendant had assaulted her at least four times. On each occasion, the Defendant hit her in the face, cursed at her, and had sex with her. Sometimes he threw her against the wall and pushed her away from anything she could grab or away from the door to prevent her from escaping. He would stop her from resisting by restraining her arms or wrists and holding her down. The Defendant told the victim that he would kill her loved ones if she told anyone, and he would deny that it had happened.

A few days after the July incident, the victim reported the offense to her sister and then went to the hospital. While at the hospital, she gave her only statement regarding the offense to Bonnie Grimsley, the Sexual Assault Nurse Examiner (SANE). The statement corroborates the victim's trial testimony, with minor discrepancies pertaining to factors such as the location of the knife and whether the Defendant kissed her mouth. More important, however, is the physical evidence of sexual trauma detailed in Grimsley's examination report, in Grimsley's trial testimony, and in the photographs taken in the course of the examination. The trauma included bruising, tears, abrasions, and swelling. In fact, the swelling was so severe, Grimsley called in Dr. Virginia Alfred, an OB/GYN, to help with the speculum exam. According to Dr. Alfred, the edema was caused by sexual trauma which did not occur with regular sexual activity but with very violent and

3

aggressive sexual activity. The victim's injuries were consistent with sexual assault.

Detective Stan Suire with the Abbeville Police Department was the investigator in this case. He searched the residence about two days after the offense was reported. Three knives were recovered from the kitchen. No gun was recovered, although the victim had stated at the hospital that the Defendant had a gun and had held it to her head. Detective Suire inspected the bed where the offense occurred and observed a puncture mark in the comforter which could have been caused by a knife. The puncture mark was consistent with the knives recovered. Also, the hinges on the door to the victim's bedroom were damaged, as was the bolt on the opposite side of the door where it latched. On cross-examination, Detective Suire confirmed that the puncture mark in the comforter was not documented in his report. He also acknowledged that he did not photograph the damaged hinges and did not find any evidence of blood during his search of the victim's bed.

At trial, the victim was shown a comforter recovered from her home, and she identified it as the one on her bed on the day of the offense. A semen stain from the comforter was tested and matched the DNA profile of the Defendant with a reasonable degree of scientific certainty. The victim was also shown three knives, and she identified one of the knives as the one she had under her pillow on the day of the offense.

The Defendant testified on his own behalf and denied ever having sex with the victim. He stated that he began living with G.C. when the victim was about ten years old. He characterized himself as the disciplinarian in the household, and stated that the victim may have been angry at him for punishing her by taking her

4

phone and computer games or prohibiting her from doing things. However, both G.C. and the victim testified that the Defendant never punished the victim or disciplined her in any way. The Defendant attempted to explain the semen stain on the comforter by saying that he and G.C. had used the bed in the victim's room in the summer of 2008. He also suggested that other family members who cared for the victim after the assault were mad at him and at G.C. because of their planned move to Alabama and because G.C. had declined to give them money she had received from the Road Home Project.

G.C., testifying for the defense, described the Defendant as a great person and someone who always helped out with the children. Her children would go to him with their problems, and he was always there to guide them. Prior to the instant offense, no one ever related to her that the Defendant was doing anything inappropriate. G.C. maintained she would have known if anything was going on, because she was very close to her children and her niece, the victim. Contradicting the Defendant's testimony, G.C. stated that she received about $50,000.00 from the Road Home Project and that she gave each of the children some of the money. With regard to moving, G.C. explained that prior to the time of the allegation, she and the Defendant planned to move to Atlanta, not Alabama as stated by the Defendant. The victim and other family members were happy about the move. G.C. did not believe the victim's allegation against the Defendant at the time, and she stated at trial that she still did not believe it happened. G.C. maintained she would know if something was wrong with the victim.

**Penetration**

The Defendant asserts that penile penetration is a necessary element of forcible rape. He complains that the victim did not describe the act of rape or

provide details of the sexual encounter to show there was indeed penetration. Even assuming that the Defendant forced himself inside her, the Defendant avers that the victim did not identify what was forced inside her.

In support of his argument, the Defendant cites *State v. Marigny*, 532 So.2d 420 (La.App. 1 Cir. 1988), where the court determined that the alleged victim did not sufficiently testify as to penetration nor did the State present any medical evidence of penetration. A conviction for the lesser-included offense of attempted carnal knowledge of a juvenile was substituted for the jury's verdict.

Conversely, in the instant case, the victim's testimony that the Defendant had sex with her was not the only evidence of sexual intercourse. At trial, the victim confirmed that the Defendant forced himself into her, that he did have sex with her, and that she was certain of that fact. Additionally, the victim's testimony was corroborated by the testimony of the nurse and physician who conducted the physical examination and verified with photographs the physical evidence of significant trauma. The physician opined that the trauma was caused by sexual assault. Further, the holding in *Marigny* does not require that a victim must provide details of the sexual encounter to show there was indeed penetration. Rather, the *Marigny* court found simply that the victim's testimony and the testimony of her mother were insufficient evidence to show penetration.

In this case, the evidence presented was sufficient to prove that element of the crime.

**Degree of Force**

The Defendant argues that the State had to prove the victim was prevented from resisting the act by either force or threats of physical violence or, under the circumstances, it was reasonable for her to believe such resistance would not

prevent the rape. Although the victim testified that she kicked the Defendant and that he slapped her while wearing big rings, the Defendant stresses that no one recorded observing any injuries to the victim's face or other areas to suggest a struggle. The Defendant also criticizes the lack of physical evidence to show she had been drug by her hair or was hit.

The degree of force necessary to prove forcible rape was addressed by the court in *State v. Berniard*, 03-484, p. 10 (La.App. 5 Cir. 10/15/03), 860 So.2d 66, 73, *writ denied*, 03-3210 (La. 3/26/04), 871 So.2d 345:

> The difference between aggravated rape and forcible rape is the "degree of force employed and the extent to which the victim resists." *State v. Parish*, 405 So.2d 1080, 1087 (La.1981); *State v. Puckett*, 02-997, p. 10 (La.App. 5th Cir.1/28/03), 839 So.2d 226, 231. A greater degree of force is necessary to justify the more serious punishment imposed for aggravated rape. *State v. Jackson*, 437 So.2d 855, 858 (La.1983). The degree of force employed and the determination of the grade of rape is for the jury to decide. *State v. Cepriano*, 00-213, p. 9 (La.App. 5th Cir.8/29/00), 767 So.2d 893, 899. Nonetheless, the mere fact the defendant was unarmed and the victim suffered no extensive physical pain or injury does not negate the possibility that an aggravated rape occurred. *Puckett*, 02-997 at p. 8, 839 So.2d at 231.

The victim's SANE report reflects that before raping her, the Defendant grabbed her by the neck and threw her against the wall. After dragging the victim by her hair, he grabbed her by the neck once more and threw her onto the bed. Bruises on the victim's neck were documented and photographed by Grimsley, and the photographs were admitted into evidence. The report also indicates that the victim tried to get the Defendant off of her and he slapped her continuously. When the victim threatened to call the police if he did not get off of her, the Defendant punched the victim in the face. When the victim broke free and attempted to escape through the front door, the Defendant stopped her by grabbing her hair. The victim also tried to escape through her bedroom window but was stopped

7

again by the Defendant who had armed himself with a gun. The Defendant held the gun to her head and threatened to kill the victim and her loved ones if she told anyone. The victim's trial testimony also reflects that she tried to stop the Defendant by kicking him and that he slapped her repeatedly in the face.

Considering this evidence, the State clearly proved the victim was prevented from resisting through the use of force and threats of physical violence.

**Inconsistencies**

The Defendant also complains about the inconsistencies between the victim's trial testimony and either the SANE report or Detective Suire's report.

As noted by this court in *Waguespack*, 06-410 (La.App. 3 Cir. 9/27/06), 939 So.2d 642-43, quoting *State v. Schexnaider*, 03-144, p. 9 (La.App. 3 Cir. 6/4/03), 852 So.2d 450, 456-57 "'[t]he fact that the record contains evidence which conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient.'" Also:

> "[T]he credibility of a witness, including the victim, is within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. '[T]he *Jackson* standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the fact finder at trial.'" [*State v.*] *Schexnaider*, [03-144, p. 9 (La.App. 3 Cir. 6/4/03),] 852 So.2d [450] at 457 (citations omitted), *quoting State v. Williams*, 00-981, p. 7 (La.App. 5 Cir. 4/11/01), 786 So.2d 805, 810, *writ denied*, 01-1377 (La.3/20/02), 812 So.2d 646. Furthermore, the testimony of the victim alone is sufficient to establish the elements of a sexual offense. *Id.*

> *State v. Willis*, 05-218, p. 15 (La.App. 3 Cir. 11/2/05), 915 So.2d 365, 378-79, *writ denied*, 06-0186 (La.6/23/06), 930 So.2d 973.

*Id.* at 643 (alterations in original).

Considering the evidence as a whole, we find the trial judge made a rational credibility determination in finding the victim's testimony to be reliable. The

8

record reflects the evidence presented by the State was sufficient to prove forcible rape; thus, there is sufficient evidence to support the conviction, and there is no merit to this assignment of error.

**ASSIGNMENT OF ERROR NO. 2:**

By this assignment of error, the Defendant asserts that the minutes do not indicate he waived his right to a jury trial. The Defendant contends the only mention of a jury trial waiver within the record was in closing arguments when defense counsel stated, "apparently he [the Defendant] must have a great deal of faith in your judgment, because he chose to waive the jury in this matter." The Defendant argues the trial court erred in not assuring that he knowingly and voluntarily waived his right to a jury trial.

In response to this assignment of error, the State filed a Motion to Supplement the Record to include the transcript of the proceeding wherein the Defendant waived his right to a jury trial. The motion was granted, and a supplemental record was received in this court, containing therein a transcript of a hearing regarding the Defendant's waiver of a jury trial. The transcript reflects that he was represented by counsel. Before accepting the waiver of his right to a jury trial, the trial court clearly confirmed that the Defendant understood his right and went a step further by inquiring about his reasons for wanting to waive his right. The trial court also offered the Defendant one last opportunity to discuss any questions he had with his lawyer or the court before waiving his right to a jury trial, which offer the Defendant declined.

Louisiana Code of Criminal Procedure Article 780(A) provides in pertinent part, "A defendant charged with an offense other than one punishable by death

9

may knowingly and intelligently waive a trial by jury and elect to be tried by the judge."

This court has stated:

> In determining whether a defendant voluntarily waived his right to jury trial, a trial court is only required to determine whether the defendant's waiver was made knowingly and intelligently. *See State v. Campbell*, 42,099 (La.App. 2 Cir. 6/20/07), 960 So.2d 363. It "does not require a *Boykin*-like colloquy." *Id.* at 367.

> Although concrete requirements for determining if a waiver of jury trial is knowingly and intelligently made do not exist, this court has historically required, at a minimum, that there be a transcript containing a colloquy indicating that Defendant knows that he is entitled to a trial by jury and that he does not want to exercise that right. *See State v. P.T.,* 07-665 (La.App. 3 Cir. 12/5/07), 970 So.2d 1255, *writ denied*, 08-26 (La.5/30/08), 983 So.2d 895; *State v. Pierre*, 02-277 (La.App. 3 Cir. 10/2/02), 827 So.2d 619 (we reversed the trial court's finding that the defendant had knowingly waived her right to trial by jury when the transcript of the proceedings in which the right to jury trial was waived was missing, and, once found, indicated that the defendant had some doubts about the waiver and did not explicitly waive her right to trial by jury.)

*State v. Bias*, 10-1440, pp. 7-8 (La.App. 3 Cir. 5/4/11), 63 So.3d 399, 405, *writ denied*, 11-1063 (La. 11/14/11), 75 So.3d 939 (footnote omitted).

In *State v. Hargrave*, 05-1027 (La.App. 3 Cir. 3/1/06), 926 So.2d 41, *writ denied*, 06-1233 (La. 11/22/06), 942 So.2d 552, this court found that the record established a knowing and intelligent waiver of the defendant's right to trial by jury. The transcript of the defendant's waiver demonstrated that she was represented by counsel at the waiver hearing. The trial court called the defendant to the stand and examined her before accepting her waiver. Also, the trial court established that the waiver was the defendant's idea and decision, not simply acquiescence with her counsel's advice.

10

Likewise, in the instant case, we find the Defendant, with the assistance of counsel, made a knowing and voluntary waiver of his right to a trial by jury; thus, there is no merit to this assignment of error.

**ASSIGNMENT OF ERROR NO. 3:**

By this assignment of error, the Defendant argues that the trial court erred in denying his motion in limine, violating his constitutional right to present a defense and to effectively cross-examine his accuser. On the morning of the first day of trial, the Defendant filed a written motion in limine, seeking to introduce photographic and testimonial evidence indicating that the victim was having sexual intercourse with another minor. In addition, he sought to introduce cell phone records which included outgoing text messages relating to discussions of sex and a specific photograph of an erect penis of an individual other than the defendant. The Defendant maintained that the evidence was admissible as an exception to the prohibition of reputation evidence contained in La.Code Evid. art. 412. The Defendant also asserted that the evidence would show bias, interest, and/or corruption under La.Code Evid. arts. 403 and 607(D). The Defendant concludes that the trial court effectively denied him his right to the full cross-examination of the victim by limiting the admissibility of potential impeachment evidence.

The State asserts on appeal that the Defendant wanted to use the victim's past sexual experiences and discipline as a reason for her to be prejudiced as to the Defendant, giving rise to fabricated allegations of rape. The State maintains that Article 607 does not allow for the admission of evidence that is specifically forbidden by Article 412. The State asserts that such an application of the code would contradict the intent of its drafters–to protect victims of sexual crimes and their remaining dignity after being examined and interviewed.

11

The Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to be confronted with the witnesses against him. The primary purpose behind this right is to secure for the defendant the opportunity for cross-examination. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. *State v. Hillard*, 398 So.2d 1057, 1059 (La.1981).

An accused also has a constitutional right to present a defense. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). As a general rule, a party may attack the credibility of a witness by examining him or her concerning any matter having a reasonable tendency to disprove the truthfulness of his or her testimony. LSA-C.E. art. 607(C). The right of an accused sex offender to present a defense is, however, balanced against the victim's interests under LSA-C.E. art. 412, which is meant to protect the victim of sexual assault from having her sexual history made public.

*State v. Zeringue*, 03-697, pp. 13-14 (La.App. 5 Cir. 11/25/03), 862 So.2d 186, 195, *writ denied*, 03-3523 (La. 4/23/04), 870 So.2d 298.

In *State v. Loyden*, 04-1558 (La.App. 3 Cir. 4/6/05), 899 So.2d 166, the defendant's request on the morning of the trial to question the victims' past sexual behavior was denied. At trial, the defendant asked the victims' mother whether the victims ever complained about anything sexual and if she had ever explained the "birds and the bees" to them. The State's objections to the two questions were sustained. On appeal, the defendant argued that the intent was to show evidence of prior conduct by the two juveniles to explain their behavior and the cause of the medical evidence presented. The court found, however, that the questions were designed to solicit whether the victims had been sexually molested by another person and where they may have received the information necessary to describe the sexual acts.

In the instant case, the Defendant seeks to introduce evidence of the victim's sexual activity or behavior after the offense was committed to show she was biased

and had a motive for fabricating a story against him. This evidence is clearly the type of evidence prohibited by Article 412, and any related questions would suggest that the victim was sexually active. Further, the Defendant has not shown how such evidence would show bias or interest on the victim's part, leading to a motive for fabricating a story against the Defendant. Accordingly, we find no merit to this assignment of error.

## ASSIGNMENT OF ERROR NO. 4:

By this assignment of error, the Defendant argues that the trial court erred in failing to grant his motion for a mistrial following a discovery violation by the State. The Defendant asserts that the State failed to comply with discovery procedures when it did not provide investigative information, namely photographs taken during the execution of a search warrant of the Defendant's home. Then at trial, Detective Suire testified to matters beyond the information contained in the reports provided to the defense.

In support of his argument, the Defendant cites *State v. Simmons*, 03-20, pp. 19-20 (La.App. 5 Cir. 4/29/03), 845 So.2d 1249, 1261-62, wherein the court stated,

> Louisiana's criminal discovery rules are intended to eliminate unwarranted prejudice arising from surprise testimony and evidence, to permit the defense to respond to the State's case, and to allow a proper assessment of the strength of the State's case. La.C.Cr.P. arts. 716-729; *State v. Brazley*, 97-2987, p. 3 (La.10/14/98), 721 So.2d 841, 842; *State v. Dennis*, 00-182, p. 10 (La.App. 5 Cir. 12/14/00), 777 So.2d 569, 572, *writ denied*, 01-0163 (La.11/21/01), 802 So.2d 629.
>
> La.C.Cr.P. art. 718 provides for discovery of documents and tangible evidence, including photographs, which are within the possession, custody, or control of the state when items sought are (1) favorable to the defendant and material and relevant to guilt or punishment; (2) are intended for use by the state as evidence at trial; or (3) were obtained from or belong to the defendant. *State v. Ray*, 423 So.2d 1116, 1118 (La.1982); *State v. Ware*, 01-194, p. 15 (La.App. 5 Cir. 8/28/01), 795 So.2d 495, 502. Discovery is not limited to what is contained in the district attorney's file. *State v. Lee*, 531 So.2d 254 (La.1988).

> The State has a continuing duty of disclosure and if the State, subsequent to ordered disclosure, discovers additional evidence or decides to use a particular item as evidence at trial, the State has a continuing duty to notify the defendant of the evidence and of its intended use at trial. La.C.Cr.P. art. 729.3; *State v. Williams*, 448 So.2d 659, 664 (La.1984).

In pretrial proceedings, the Defendant in the present case filed a motion for discovery seeking the disclosure of crime scene photographs. A motion for production was also filed by the Defendant which sought the disclosure of all photographs intended for use by the State as evidence at trial. Only photographs of the victim were produced. Nevertheless, at trial, Detective Suire stated he was "pretty sure" he had taken pictures of pertinent items in the victim's home: He recalled from memory that he inspected the bed in the victim's bedroom where the offense occurred and noticed a puncture made in the comforter that he believed could have been caused by a knife. He also observed damage to the victim's bedroom door. No photographs of the comforter or the door were produced in discovery. Later in his testimony, Detective Suire stated that another officer, Lt. R.J. Thibodeaux, must have photographed the comforter and the door because he had the camera. Suire also indicated that Thibodeaux and Officer Jason Hebert probably completed their own reports of the investigation.

After Detective Suire was excused from the stand, the Defendant moved for a mistrial, admitting it was possibly premature, based on Detective Suire's testimony that there were potentially other reports, information, or photographs that were not provided to the defense. The Defendant also based his motion on surprise that the information existed. The State stressed that Detective Suire assumed that photographs were taken, but he had no personal knowledge of any photographs or any statement by Officer Hebert or Lieutenant Thibodeaux. As such, the State had no knowledge that these photographs or statements existed, and

14

they were not found in Detective Suire's case file.  The trial court ruled that the motion was premature at that point.

The Defendant's motion for a mistrial was not revisited or discussed any further at trial.  The State did not attempt to introduce or rely upon any photographs that were not disclosed to the Defendant, and Detective Suire testified he had not seen any photographs from the crime scene.  Detective Suire's testimony was based on his memory of the investigation where he saw a puncture mark in the comforter recovered from the victim's bed and damage to the victim's door.

Accordingly, we do not find the Defendant has shown the State failed to comply with discovery procedures.  Thus, this assignment of error is without merit.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record.  After reviewing the record, we find the record does not indicate the trial court advised the Defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8.  Thus, the trial court is directed to inform the Defendant of the provisions of Article 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof that the Defendant received the notice in the record of the proceedings.  *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

Additionally, we note that the Defendant was sentenced immediately after his motion for new trial was denied by the court, without the required twenty-four-hour delay provided for in La.Code Crim.P. art. 873.  However, the record shows defense counsel expressly waived the delay when he announced that they were

15

ready for sentencing. This court has found an express waiver occurs when defense counsel responds affirmatively when the trial court asks if he is ready for sentencing. *See State v. Williams*, 01-998 (La.App. 3 Cir. 2/6/02), 815 So.2d 908, *writ denied*, 02-578 (La. 1/31/03), 836 So.2d 59. Therefore, we conclude this apparent error is without consequence.

## DECREE:

The Defendant's conviction and sentence are hereby affirmed. The trial court is instructed to inform the Defendant of the correct provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof in the record that the Defendant received the notice.

**CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.**